| | | |
|---|---|---|
| LORI T. TYLL, | : | |
|     Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:17-cv-1574(JCH) |
|     v. | : | |
| | : | |
| STANLEY BLACK & DECKER LIFE | : | JULY 12, 2019 |
| INSURANCE PROGRAM ET AL., | : | |
|     Defendants. | : | |

**RULING RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 58 & 59)**

Plaintiff, Lori T. Tyll ("Mrs. Tyll"), individually and as the Executrix of the Estate of Michael A. Tyll ("Mr. Tyll"), brought this action, arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), against the Stanley Black & Decker Life Insurance Program ("Plan") and Federal Insurance Company ("Federal Insurance") (collectively "defendants"). See Complaint ("Compl.") (Doc. No. 1) at 1. Mrs. Tyll seeks payments of benefits under the Plan that she alleges have been withheld in violation of the Plan terms. Id. Mrs. Tyll also seeks to recover interest, costs and attorneys' fees. Id. at 2. Before the court are the parties' Cross-Motions for Summary Judgment. See Defendants' Motion for Summary Judgment (Doc. No. 58); Plaintiff's Motion for Summary Judgment (Doc. No. 59).

For the reasons stated below, both the plaintiff's and the defendants' Motions for Summary Judgment are granted in part and denied in part.

**I.      STANDARD OF REVIEW**

    A.      Summary Judgment

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

256 (1986); <u>Wright v. N.Y. State Dep't of Corr.</u>, 831 F.3d 64, 71–72 (2d Cir. 2016).

Once the moving party has met its burden, the nonmoving party "must set forth specific

facts showing that there is a genuine issue for trial," <u>Anderson</u>, 477 U.S. at 256, and

present "such proof as would allow a reasonable juror to return a verdict in [its] favor,"

<u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 38 (2d Cir. 2000). "An issue of fact is

genuine and material if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." <u>Cross Commerce Media, Inc. v. Collective, Inc.</u>, 841 F.3d

155, 162 (2d Cir. 2016).

    In assessing the record to determine whether there are disputed issues of

material fact, the trial court must "resolve all ambiguities and draw all inferences in favor

of the party against whom summary judgment is sought." <u>LaFond v. Gen. Physics</u>

<u>Servs. Corp.</u>, 50 F.3d 165, 175 (2d Cir. 1995). "Where it is clear that no rational finder

of fact 'could find in favor of the nonmoving party because the evidence to support its

case is so slight,' summary judgment should be granted." <u>F.D.I.C. v. Great Am. Ins.</u>

<u>Co.</u>, 607 F.3d 288, 292 (2d Cir. 2010) (quoting <u>Gallo v. Prudential Residential Servs.</u>,

<u>Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994)). On the other hand, where "reasonable

minds could differ as to the import of the evidence," the question must be left to the

finder of fact. <u>Cortes v. MTA N.Y. City Transit</u>, 802 F.3d 226, 230 (2d Cir. 2015) (quoting

<u>R.B. Ventures, Ltd. v. Shane</u>, 112 F.3d 54, 59 (2d Cir. 1997)).

    When, as here, both parties come before the court on cross-motions for

summary judgment, the court is not required to grant judgment as a matter of law for

either side. <u>See</u> <u>Ricci v. DeStafano</u>, 530 F.3d 88, 109–10 (2d Cir. 2008). "Rather the

court must evaluate each party's motion on its own merits, taking care in each instance

to draw all reasonable inferences against the party whose motion is under consideration." Id. at 110.

B.    ERISA Claims

ERISA-regulated plans are construed in accordance with federal common law. See Aramony v. United Way of Am., 254 F.3d 403, 411 (2d Cir. 2001). "ERISA federal common law is largely informed by state law principles," and courts "apply familiar rules of contract interpretation in reading an ERISA plan." Lifson v. INA Life Ins. Co. of New York, 333 F.3d 349, 352–53 (2d Cir. 2003) (per curiam). Unambiguous language in an ERISA plan must be enforced according to its plain meaning. Aramony, 254 F.3d at 412. "Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." Id. In determining whether language in a plan is ambiguous, "reference may not be had to matters external to the entire integrated agreement." Id. Where, as here, de novo review applies,[1] ambiguities in the language of an insurance policy that is part of an ERISA plan are to be construed against the insurer. See Critchlow v. First UNUM Life Ins. Co. of Am., 378 F.3d 246, 256 (2d Cir. 2004).

---

[1] The parties stipulated that de novo review applies. See Joint Stipulation (Doc. No. 52) ¶ 9 ("[T]he parties jointly agree and stipulate that . . . the review standard to be applied by the Court in reviewing the Second Administrative Appeal Determination will be de novo, rather than abuse of discretion."); Order Granting Stipulation (Doc. No. 53).

## II.    FACTS[2]

On September 25, 2014, Mr. Tyll died while on board a commercial flight from Paris to New York.  Defendants' Local Rule 56(a)(2) Statement of Facts in Opposition ("Def. SOF") (Doc. No. 65-1) ¶ 3.  On the date of Mr. Tyll's death, his salary was greater than $ 1 million per year.  Id. ¶ 9.  Stanley Black & Decker ("Stanley") provided Mr. Tyll various forms of insurance through the Plan, including life insurance, business travel insurance, and accidental death and dismemberment insurance.  Id. ¶ 6.  Mr. Tyll was an active, full-time employee of Stanley at the time of his death and was therefore a Class 1 Insured Person under the Plan.  Id. ¶ 12.

The Plan is comprised of "component benefit programs," see Administrative Record ("AR __.") 4.  The component program at issue in this litigation is the Business Travel Accident Insurance Program ("the Policy").  See AR 18.  Principal sum is defined in the Policy as "the amount of insurance appearing in Section IV-A of the Schedule of Benefits applicable to each Class."  AR 52.  For Class 1 Insured Persons, the Principal Sum under the Policy is "Five (5) times Salary subject to a Minimum of $100,000 and a Maximum of $1,000,000."  AR 78.  Salary is defined as "a Primary Insured Person's Annual Benefits pay from the Policyholder at the time of the Accident, excluding overtime and incentive payments."  AR 54.

On October 9, 2014, Stanley filed a claim with Federal Insurance naming Mrs. Tyll as the beneficiary of Mr. Tyll.  Def. SOF ¶ 15.  On December 11, 2014, Federal sent

---

[2] The facts are taken, where undisputed, from the Plaintiff's Local Rule 56(a)(2) Statement of Facts in Opposition ("Pl. SOF") (Doc. No. 64), the Defendants' Local Rule 56(a)(2) Statement of Facts in Opposition ("Def. SOF") (Doc. No. 65-1), and the Administrative Record.  The Administrative Record is cited to as "AR __."

Mrs. Tyll a denial letter.  Id. ¶ 33.  Mrs. Tyll appealed the denial on June 12, 2015 and,

on April 12, 2017, Federal Insurance informed Mrs. Tyll's attorney that it would pay the

claim.  Id. ¶¶ 34, 73.  On May 16, 2017, Mrs. Tyll appealed Federal Insurance's decision

to pay $1 million on the claim instead of $5 million, as well as the decision not to pay

accrued interest under Connecticut law.  Id. ¶ 78.

## III.  DISCUSSION

Mrs. Tyll seeks two things: first, she seeks payment of the additional benefits she

argues she is entitled to under the Plan, in the amount of $4 million, plus attorneys'

fees, interest, and cost of litigation.  See Compl. at 11 ¶¶ 1–2.  Second, she seeks

prejudgment interest pursuant to ERISA and Connecticut law.  See id. ¶ 1. As to the

claim for additional benefits, the defendants argue that the Plan unambiguously

provides for a benefits cap of $1 million.  See Defs.' Mem. in Supp. at 6.  As to the claim

for prejudgment interest, the defendants argue first, that the Plan is not subject to the

Connecticut law under which Mrs. Tyll seeks prejudgment interest, id. at 8, and second,

that even if the law were applicable, ERISA precludes its application, id. at 8–9.

The Plan and Policy identify nine classes of insured persons.  AR 78.  Those

classes are: (1) All active full time U.S. and International Employees of the Policyholder;

(2) All active part time and temporary U.S. and International Employees of the

Policyholder; (3) Designated business guests, prospective employees, dependent

employees, consultants, and audit staff; (4) All pilots; (5) All employees covered by

relevant collective bargaining agreements; (6) All active non-employee officers and non-

officer directors; (7) Spouses and domestic partners of primary insured persons; (8)

Dependent children of primary insured persons; and (9) All expatriates of the

policyholder.  AR 78.  Mr. Tyll was a Class 1 Insured Person under the Plan.  Def. SOF ¶ 12.

Two questions determine whether Mrs. Tyll is entitled to the payment of additional benefits.  First, the court must determine whether the Plan language in question, which language defines the principal sum payable under the Plan, is ambiguous.  If the language unambiguously comports with the defendants' proffered interpretation, then Mrs. Tyll would not be entitled to any benefits beyond the $ 1 million already paid under the Plan.  If, however, the language is ambiguous, the court must determine whether Mrs. Tyll's reading of the statute is reasonable.  If the language is ambiguous and Mrs. Tyll's reading is reasonable, the language must be construed in her favor.  See Critchlow, 378 F.3d at 256.  Mrs. Tyll would then be entitled to the $4 million she seeks.

A.    Ambiguity

The language at issue is found under the heading "PRINCIPAL SUM" in the Policy.  See AR 78.  The section defines "principal sum" as follows, with each numeral in the left-hand column referencing a class of insured persons:

B) PRINCIPAL SUM

| | |
|---|---|
| 1 | Five (5) times Salary subject to a Minimum of $100,000 and a Maximum of $1,000,000 |
| 2 | $100,000 |
| 3 | $100,000 |
| 4 | Two (2) times Salary subject to a Minimum of $100,000 and a Maximum of $1,000,000 |
| 5 | $41,000 |
| 6 | $250,000 |
| 7 | $100,000 |
| 8 | $25,000 |
| 9 | Five (5) times Salary subject to a Minimum of $100,000 and a Maximum of $1,000,000 |

AR 78.  In the event of a "Loss of Life," as a Class 1 Insured Person, Mr. Tyll was entitled to benefits equal to 100 percent of a principal sum in the amount of "Five (5) times Salary subject to a Minimum of $100,000 and a Maximum of $1,000,000."  AR 78. The issue in this case is "whether the limiting clause "subject to a Minimum of $100,000 and a Maximum of $1,000,000" modifies the noun . . . Salary (by placing a floor and cap on Salary) . . . or whether the limiting clause places a floor and cap on the benefits overall, as [the defendants] argue[ ]."  Plaintiff's Memorandum in Support of Summary Judgment (Pl.'s Mem. in Supp.) (Doc. No. 59-1) at 2–3.  The first question for the court is whether the language defining the applicable principal sum is ambiguous.

Mrs. Tyll argues that a "fair reading of the clause is that it is ambiguous, in that it is susceptible to multiple reasonable interpretations."  Id. at 3.  She argues that the words "minimum" and "maximum" can reasonably be interpreted as modifying the word "salary" as opposed to "principal sum."  Id. at 2–3.  The defendants argue that the court should "reject Plaintiff's interpretation as unreasonable as a matter of law."  Defendants' Memorandum in Support of Summary Judgment ("Defs.' Mem. in Supp.") (Doc. No. 58-1) at 5.  In support of this argument, the defendants argue that, taken as a whole, "the Policy is not in any way ambiguous" and "the only construction which may be fairly placed on the words' at issue" is that the maximum amount of benefits to which anyone is entitled under the Plan is $1 million.  Id. at 6.

The defendants argue that the language defining principal sum "means that the maximum amount of benefits under the Policy is . . . $1 million."  Id. at 4.  Under Section IV of the Policy, entitled Benefits, Benefit Amounts for Accidental Death and Dismemberment are "expressed as a percentage of the Principal Sum."  AR 24.  For

Loss of Life, the Benefits Amount is defined as 100 percent of the principal sum. AR 25. The court agrees that the principal sum is unambiguously the maximum amount of benefits payable under the Policy for a Loss of Life. However, that does not resolve the question of whether the maximum principal sum is unambiguously $1 million, or if the Policy language could reasonably be understood to have more than one meaning.

The defendants argue that the words "minimum" and "maximum" can only reasonably be construed as referencing "principal sum." Defs.' Mem. in Supp. at 4–6. The defendants argue that the words minimum and maximum should be read to "refer to the same thing." Id. at 5. Therefore, "if the $1 million reference is to an amount of salary, so then so must the $100,000 reference . . . . It would make no sense for the $100,000 "Minimum" to refer to a total amount of benefits and the $1 million "Maximum" refer to an amount of salary." Id. The defendants further argue that under Mrs. Tyll's interpretation of the principal sum language,

> if the "Minimum" amount of $100,000 were to be considered a reference to an amount of salary, as opposed to a minimum amount of benefits, then employees making less than $100,000 would necessarily be excluded from coverage as they would not meet the "Minimum" threshold of an amount of salary to be multiplied by five.

Id. Presumably, this logic would also suggest that employees making more than $1 million "would necessarily be excluded from coverage." See id.

Mrs. Tyll responds that her interpretation of the words "minimum" and "maximum" as modifying the word "salary" creates a salary floor and cap, not a threshold amount to qualify to receive benefits under the Policy. Plaintiff's Memorandum in Opposition to Motion for Summary Judgment ("Pl.'s Mem. in Opp.") (Doc. No. 63) at 4. Therefore, an employee earning less than $100,000 would have their salary "bumped to a minimum of $100,000 to calculate the Principal Sum." Id. In effect, Mrs. Tyll's interpretation leads to

a minimum principal sum life insurance benefit of $500,000, based on a calculation of five times a minimum salary amount of $100,000, and a maximum principal sum life insurance benefit of $5 million, based on a calculation of five times a maximum salary of $1 million.

The court agrees with the defendants that the words "minimum" and "maximum" must be read to refer to and modify the same term: either salary or principal sum. However, the court finds unconvincing the defendants' argument that these two words can only reasonably be construed as modifying the word "principal sum." Reading the words minimum and maximum as modifying the word "salary" as opposed to "principal sum" does not, as the defendants argue, necessarily result in the creation of a salary threshold for benefits. Indeed, as Mrs. Tyll argues, both parties' reading of the words creates a floor and ceiling; the difference is that, while the defendants argue that the words minimum and maximum set a floor and ceiling with respect to the principal sum, Mrs. Tyll argues that the same words create a floor and ceiling as to salary. See id. at 4–5. ("[The] [d]efendants' interpretation creates a $100,000 floor with respect to benefits, just not with respect to Salary as Mrs. Tyll contends.").

In sum, the parties present two interpretations of a clause, both of which set a floor and a ceiling of a dollar amount. The defendants argue that the floor and ceiling reference the principal sum, and that the principal sum therefore could be no less than $100,000 and no greater than $1 million. See AR 3817 ("So if we had a decedent that made $15,000 per year salary, 5 times is $75,000 in this case we would pay $100,000 (minimum amount)."). Mrs. Tyll argues that the floor and ceiling reference the salary to

be multiplied by five, which salary would be calculated as no less than $100,000 and no greater than $1 million.

The court concludes that the language defining the principal sum for Class 1 Insured Persons is ambiguous. Viewed objectively, the language at issue—"Five (5) times Salary subject to a Minimum of $100,000 and a Maximum of $1,000,000"—could reasonably be read to have more than one meaning. The sentence could be read to mean that the Principal Sum was equal to five times an employee's salary, but that in no event would the Principal Sum equal less than $100,000 or greater than $1,000,000. Just as easily, the sentence can be read to mean that the Principal Sum was equal to five times a person's salary, but that in no event would the salary amount equal less than $100,000 or greater than $1,000,000.

At least one Circuit Court, in an unpublished opinion, found similar language in an ERISA plan to be ambiguous. In <u>Bauer ex rel. the Craig E. Bauer Ins. Tr. Dated Dec. 29, 2003 v. Reliance Standard Life Ins. Co.</u>, 421 F. App'x 226, 227 (3d Cir. 2011), the Third Circuit analyzed language in an ERISA plan defining a principal sum as "5 times Base Annual Earnings to a maximum of $250,000." <u>Id.</u> As in this case, the plan administrator argued that the word "maximum" applied to the principal sum, while the beneficiary argued that "maximum" modified the phrase annual earnings. <u>Id.</u> The court concluded that the language was ambiguous and that it could not tell what the parties intended from the language of the plan alone. <u>Id.</u> Unlike this case, however, the applicable standard of review was abuse of discretion, not <u>de</u> <u>novo</u>, and the Third Circuit held in favor of the plan administrator, concluding that the administrator's interpretation was reasonable. <u>Id.</u> at 227–28.

10

The defendants argue that a comparison to <u>Bauer</u> is inapposite because the language in <u>Bauer</u> contained no "'Minimum' / 'Maximum' phrasing." <u>See</u> Defendants' Memorandum in Opposition to Motion for Summary Judgment ("Defs.' Mem. in Opp.") (Doc. No. 65) at 12. Further, the defendants argue that there was no indication that the plan at issue in <u>Bauer</u> included "the kind of chart format at issue in this case." <u>Id.</u> These differences notwithstanding, the court in <u>Bauer</u> engaged in a similar interpretational analysis to determine whether the word "maximum" unambiguously modified a principal sum or salary figure and concluded that the phrasing was ambiguous. The court agrees with the <u>Bauer</u> analysis insofar as it examined similar language and determined it was ambiguous.

As in <u>Bauer</u>, it is not clear from the text of the Plan or Policy that the drafters intended for the Policy to be read with either of the parties' proffered interpretations. However, a reasonable person reading the Plan as a whole could conclude that the clause defining principal sum in the Policy could be interpreted to have more than one meaning. That is sufficient to render it ambiguous. <u>See</u> <u>Aramony</u>, 254 F.3d at 412.

B.     <u>Reasonableness</u>

Having concluded that the clause in question is ambiguous, the court must construe it in favor of Mrs. Tyll, so long as her interpretation of the clause is reasonable. <u>See</u> <u>Critchlow</u>, 378 F.3d at 256. The defendants argue that Mrs. Tyll's interpretation is unreasonable because, looking to the Policy as a whole, "it is clear that the entire phrase for each particular Class [under the heading Principal Sum] must define 'Principal Sum.'" Defs' Mem. in Opp. at 9. However, the defendants' tautological argument does not answer the question before this court: while the entire phrase clearly defines the principal sum applicable to each class of insured parties, that conclusion

fails to resolve whether the words minimum and maximum modify the word salary or principal sum.

The defendants' other arguments are similarly unavailing. The court previously addressed—and rejected—the defendants' argument that Mrs. Tyll's interpretation of the Policy language would create a threshold salary of $100,000 to be eligible for benefits. See supra, at 8–9. The defendants also argue that "six of the nine listed Classes reference a specific number—for example, $100,000—and that number is the amount of the Principal Sum." Id. Therefore, the defendants conclude, "the numbers that are referenced with respect to Class 1, which are set forth as the 'Minimum' and 'Maximum' amounts[,] should also be considered Principal Sum amounts to be consistent." Id. at 9. However, even assuming that the defendants' posited interpretation is reasonable, which in this regard the court does not view as reasonable, they provide no basis to conclude that their argument renders Mrs. Tyll's alternative interpretation unreasonable, and therefore they fail to meet their burden under de novo review.

Mrs. Tyll has presented a reasonable interpretation of the ambiguous principal sum clause at issue in this litigation. Reading the clause as Mrs. Tyll suggests—so that the words "minimum" and "maximum" modify the word salary—is no more or less reasonable than reading the same words to modify Principal Sum, as the defendants contend. Indeed, it is the most reasonable reading given that the phrase "subject to . . ." is immediately preceded by, and thus grammatically-speaking modifies, the word salary. Because the court concludes that Mrs. Tyll's interpretation of an ambiguous phrase is

reasonable, it construes the phrase in her favor. Summary judgment is granted in her

favor as to her claim for $4 million in additional benefits under the Plan.

    C.    <u>Prejudgment Interest</u>

Mrs. Tyll also seeks prejudgment interest on the total amount of the benefit

payment due to her. <u>See</u> Compl. ¶ 75. Mrs. Tyll expressly requested that the court

award her any "appropriate equitable relief, and if appropriate, legal relief, pursuant to

ERISA," including "pre-judgment interest from the date of breach, at no less than the

Connecticut statutory rate for withholding life insurance payments to beneficiaries, post-

judgment interest and costs." <u>Id.</u> at 11 ¶ 1. In her Memorandum in Support of her

Motion for Summary Judgment, Mrs. Tyll argues that she is entitled to interest pursuant

to section 38a-452 of the Connecticut General Statutes, or alternatively is entitled to

equitable prejudgment interest pursuant to ERISA. <u>See</u> Pl.'s Mem. in Supp. at 14–16.

The defendants respond that (1) the Connecticut statute does not apply to the Policy,

because the Policy is not a life insurance policy under Connecticut law; (2) even if the

statute were applicable, it is preempted by ERISA; and (3) Mrs. Tyll's claim for equitable

prejudgment interest was improperly raised for the first time in her summary judgment

papers, and nonetheless fails. <u>See</u> Defs.' Mem. in Opp. at 13–17.

    1.    Statutory Interest

Section 38a-452 of the Connecticut General Statutes provides in pertinent part

that, in the case of "an action to recover the proceeds due under a life insurance policy"

which results in a judgment for the claimant, interest "shall be paid from the date of the

death of an insured . . . to the date the verdict is rendered." Conn. Gen. Stat. § 38a-

452. Mrs. Tyll argues that she is entitled to interest under the statute. While her

Memorandum in Support of her Motion for Summary Judgment focuses on whether

ERISA preempts section 38a-452, see Pl.'s Mem. in Supp. at 15, Mrs. Tyll provides no basis to support the conclusion that the Connecticut statute is, in the first instance, applicable to the Policy or to her claim, see id. at 14–15 (quoting statutory language and concluding that "[t]herefore, on the $1,000,000 already paid, Federal owes Mrs. Tyll interest under Conn. Gen. Stat. § 38a-452(b), and on the $4,000,000 still owed, Federal owes Mrs. Tyll interest under Conn. Gen. Stat. § 38a-452(a)").

Mrs. Tyll's Memorandum fails to articulate why the Policy at issue in this case constitutes a "life insurance policy" within the meaning of the Connecticut statute. The defendants, in their Memorandum in Opposition, expressly argued that the Policy does not constitute a life insurance policy, and that Mrs. Tyll had failed to meet her burden to show that the statute applied to the Policy in question here.. See Defs.' Mem. in Opp. at 13 ("[N]owhere in her Memorandum does [Mrs. Tyll] even attempt to offer evidence that the Connecticut statute in question actually applies to the Policy."). Mrs. Tyll submitted no reply memorandum. As the defendants argue, Mrs. Tyll bears the burden as the movant for summary judgment. See id. In the absence of any evidence or legal argument upon which the court could conclude that the section 38a-452 is in fact applicable to the Policy at issue in this case, Mrs. Tyll fails to meet that burden. Therefore, Mrs. Tyll's Motion for Summary Judgment is denied insofar as it seeks statutory interest under section 38a-452 of the Connecticut General Statutes.

Furthermore, the defendants seek summary judgment in their favor on the applicability of section 38a-452 of the Connecticut General Statutes. See Defs.' Mem. in Supp. at 6–8. They argue that the statute is not applicable to the Policy because, "by its own express terms, [section] 38a-452 applies to life insurance policies," and "the

Policy is not a life insurance policy under Connecticut law." Id. at 7 (emphasis in original).

In support of this argument, the defendants submitted an Opinion of the Connecticut Department of Insurance ("DOI"), dated October 2, 2006. See Defs.' Mem. in Supp., Ex. 2 ("CT DOI Opinion") (Doc. No. 58-5). The Opinion provides that, when accidental death and dismemberment policies "offer benefits for medical services provided to an insured[, they] are subject to the health insurance laws, and they do not fall within the definition of life insurance." Id. at 1–2. The defendants further provided uncontroverted evidence that the Policy was submitted to the DOI, and that the defendants were advised by the DOI that, because the proposed Policy included certain medical related benefits, it would have to comply with health insurance requirements imposed by the State of Connecticut. See id. at 16 (responding to DOI letter, and listing manner in which Policy would comply with state requirements, including, inter alia, providing coverage for "Emergency Ambulance Services," "Newly Born Children," "Veterans [sic] Home and Hospital Coverage," and "Experimental Treatments").

The evidence supports a conclusion that the Policy is not a "life insurance" policy under Connecticut law and that the Connecticut agency responsible for approval of the Policy did not view it as such. The defendants met their initial burden to show that there is no genuine issue of fact as to whether section 38a-452 is inapplicable to the Policy.

Mrs. Tyll failed to provide any evidence or legal argument to demonstrate the existence of a genuine issue of fact as to the applicability of section 38a-452 to the Policy. Indeed, beyond quoting the statutory language and summarizing the

defendants' arguments, her Memorandum in Opposition fails to provide any basis for the court to conclude that the defendants' view is incorrect. Pl.'s Mem. in Opp. at 5–6.

Instead, Mrs. Tyll cites to another statute, section 38a-816(15), part of the Connecticut Unfair Insurance Practices Act ("CUIPA"), which provides for payment of claims and interest in the event that a responsible party fails to pay accident and health claims. See Pl.'s Mem. in Opp. at 6. However, Mrs. Tyll provides no argument, whether factual or legal, upon which to conclude that CUIPA's interest payment requirement is applicable to the Policy or claims at issue in this case. Indeed, Mrs. Tyll's Complaint contains no claim pursuant to the Connecticut Unfair Trade Practices Act ("CUTPA") or CUIPA. To the extent Mrs. Tyll belatedly seeks to amend her Complaint, she may not do so in the context of a memorandum in opposition to a Motion for Summary Judgment. Generally, a plaintiff "cannot amend his complaint in his memorandum in response to defendants' motion for summary judgment." August v. Dep't of Corrections, 424 F. Supp. 2d 363, 368 (D. Conn. 2006).

Even if such an amendment was permissible, any claims pursuant to CUIPA and CUTPA would nonetheless fail. CUIPA does not provide a private right of action. Artie's Auto Body, Inc. v. Hartford Fire Ins. Co., 317 Conn. 602, 623 (2015). While "individuals may bring an action under CUTPA for violations of CUIPA," id., CUTPA claims are preempted by ERISA, see, e.g., Woods v. Unum Life Ins. Co. of Am., No. 3:09CV809 SRU, 2011 WL 166205, at *3 (D. Conn. Jan. 19, 2011).

Because Mrs. Tyll failed to present evidence sufficient to raise a genuine issue of material fact as to the applicability of section 38-452 to the Policy at issue in this case, and because Mrs. Tyll may not seek interest pursuant to CUIPA in this ERISA action,

the court concludes that there is no genuine dispute of material fact as to whether Mrs. Tyll is entitled to statutory interest pursuant to Connecticut law. The defendants' Motion for Summary Judgment on this basis is granted.[3]

  2. Equitable Interest

Mrs. Tyll argues that, even if she is not entitled to statutory interest, the court should nonetheless exercise its discretion to award her equitable prejudgment interest pursuant to ERISA. Pl.'s Mem. in Supp. at 16. The defendants argue that (1) Mrs. Tyll improperly raised the claim for equitable prejudgment interest for the first time in her summary judgment papers, and (2) even if the claim was timely asserted, it should be denied. See Defs.' Mem. in Opp. at 15–17.

First, the court disagrees with the defendants' argument that Mrs. Tyll's claim for equitable interest under ERISA was not timely raised. While the argument was first elaborated upon in her Memorandum in Support of her Motion for Summary Judgment, the Complaint is not devoid of reference to equitable remedies under ERISA. In the "Prayers for Relief," the Complaint clearly states that Mrs. Tyll seeks an award of:

> appropriate equitable relief, and if appropriate, legal relief, pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), against Defendants, jointly and severally, in an amount of no less than $4,000,000.00 in the principal sum with pre-judgment interest from the date of breach, at no less than the Connecticut statutory rate for withholding life insurance payments to beneficiaries, post-judgment interest and costs.

Compl. at 11 ¶ 1. The Complaint does not state that Mrs. Tyll seeks prejudgment interest pursuant to Connecticut law alone; rather it states that she seeks prejudgment

---

[3] Because the court determined that there is no genuine issue of material fact as to whether Mrs. Tyll is entitled to statutory prejudgment interest on her claim, it does not reach the defendants' additional argument that ERISA preempts Mrs. Tyll's claim to statutory prejudgment interest.

interest equal to or greater than the Connecticut statutory rate. The Complaint therefore, provides notice to the defendants that Mrs. Tyll is seeking not only legal relief, but also equitable relief under ERISA, which relief includes "pre-judgment interest from the date of breach, at no less than the Connecticut statutory rate for withholding life insurance payments to beneficiaries." Id.

Moreover, the Second Circuit has noted that, "[l]ike an award of attorney's fees for a successful ERISA claim by an employee benefit plan participant, prejudgment interest is 'an element of [the plaintiff's] complete compensation.'" Slupinski v. First Unum Life Ins. Co., 554 F.3d 38, 54 (2d Cir. 2009) (alterations in original) (quoting Osterneck v. Ernst & Whinney, 489 U.S. 169, 175 (1989)). Therefore, the claims brought pursuant to ERISA arguably provided sufficient notice, standing alone, of an accompanying claim for interest.

Whether to award prejudgment interest in an ERISA claim is "committed to the sound discretion of the district court." Id. at 53–54. In determining whether to award prejudgment interest, the district court should look to the following factors: (1) the need to fully compensate the wronged party for actual damages suffered, (2) considerations of fairness and the relative equities of the award, (3) the remedial purpose of the statute involved, and (4) other general principles deemed relevant by the court. Id. at 55.

The first and second factors weigh in Mrs. Tyll's favor. Mrs. Tyll was deprived of the use of a significant sum of money, beginning with the defendants' denial of her claim, through the denial of her appeal of the later decision to award $1 million as opposed to the $5 million she sought, and then extending through the course of this litigation. For that same period, the defendants were able to access and make use of

the same sum of money, including through investments and other interest-bearing activities which Mrs. Tyll was required to forego.  Therefore, both the need for full compensation and an examination of the fairness and the relative equities weigh in Mrs. Tyll's favor.  See id. at 55 (noting that administrator's ability to use money that should have been paid to claimant weighed in favor of a prejudgment interest award).

The third factor, the remedial nature of the statute, similarly weighs in Mrs. Tyll's favor.  As one court in this circuit has noted, "awarding prejudgment interest where a defendant has improperly withheld payment from a plaintiff for a significant period of time encourages plaintiffs to bring such actions by ensuring that they will be made whole should they succeed on their claims."  Alfano v. CIGNA Life Ins. Co. of New York, No. 07 CIV. 9661 (GEL), 2009 WL 890626, at *7 (S.D.N.Y. Apr. 2, 2009).  As noted above, plaintiffs are forced to forego interest-bearing uses of the funds in the period between a denial of a claim and a successful ERISA suit.  Absent some level of interest, a monetary award could not make plaintiffs whole for the loss suffered by the improper withholding of funds over time.

As to the fourth factor, the defendants argue that Mrs. Tyll took certain actions that resulted in a delay of her appeal of the denial of her claim.  Defs.' Mem. in Opp. at 16–17.  The defendants note that Mrs. Tyll asked for and received an extension of time to submit her appeal, and she did not directly seek certain "necessary records" from Mr. Tyll's medical insurance provider, instead leaving it to the defendants to do so.  While this may marginally weigh in favor of the defendants, the delay caused by Mrs. Tyll was not so great so as to outweigh the first, second, and third factors.  The court therefore concludes that prejudgment interest is warranted.

The court, having found that the relevant factors weigh in favor of prejudgment interest, must determine the appropriate interest rate. Mrs. Tyll requests that the court apply Connecticut's statutory prejudgment interest rate of 10 percent per year. See Pl.'s Mem. in Supp. at 16. In support of this argument, Mrs. Tyll argues that "[a]n award tied to the state statutory rate is not unheard of." Id. (citing Gross v. Sun Life Assurance Company of Canada, __F.Supp.3d__, 2018 WL 3193225 (D. Mass. 2018)).

The defendants did not proffer an interest rate they deemed reasonable, instead arguing that prejudgment interest as a whole was improper or, in the alternative, unwarranted. The defendants argue that, because there was "ample reason for Plaintiff's claim to be denied in the first place, . . . Defendants should not be punished for denying a claim that, on its face, was not covered by the Policy." Defs.' Mem. in Opp. at 16. However, the purpose of the prejudgment interest award is not to "punish" the defendants. Rather, it is to ensure that Mrs. Tyll—who was entitled to a full payment of her claim—is made whole.

While some courts have, as Mrs. Tyll seeks, applied a state statutory interest rate when determining prejudgment interest in an ERISA action, courts have broad discretion to select appropriate interest rates. See Jones v. UNUM Life Ins. Co. of Am., 223 F.3d 130, 139 (2d Cir. 2000) (noting courts have variously applied the federal statutory postjudgment rate, the potential rate of return on investments, and the rate the defendant would have had to pay to borrow the money withheld from the plaintiff).

The average one-year treasury constant maturity rate for the week ending June 7, 2019 was 2.05 percent.[4]  The average prime rate from Q1 2015 through Q1 2019 was 4.03 percent.[5]  The court finds that the awarding prejudgment interest equal to the average one-year treasury constant maturity rate would provide the defendants with an unwarranted windfall based on their withholding of Mrs. Tyll's benefits.  Section 37-3a of the Connecticut General statutes, on which Mrs. Tyll relies, sets the maximum allowable prejudgment interest rate at 10 percent.  See id. ("[I]nterest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions.").  However, the court "can order any rate of interest order under Gen. Stat. § 37-3a so long as it does not exceed ten (10%) percent."  McKenna v. Delente, No. FSTFA040200412S, 2007 WL 4733119, at *6 (Conn. Super. Ct. Dec. 20, 2007), aff'd, 123 Conn. App. 146, 2 A.3d 38 (2010).

The court determines that prejudgment interest in the amount of eight percent per year, compounded annually, is reasonable, avoids any unwarranted windfall to either party, and will adequately serve to make Mrs. Tyll whole, considering in particular her lost opportunity to invest the benefits amounts withheld.[6]  Eight percent annual interest will be calculated, as to $1 million of the benefits, from the denial of Mrs. Tyll's

---

[4] The court obtained the relevant data from the website of the Federal Reserve Bank of St. Louis. See "1-Year Treasury Constant Maturity Rate," Federal Reserve Economic Data, Federal Reserve Bank of St. Louis, https://fred.stlouisfed.org/series/DGS1.

[5] The court obtained the relevant data from the website of the Federal Reserve Bank of St. Louis. See "Bank Prime Loan Rate," Federal Reserve Economic Data, Federal Reserve Bank of St. Louis, https://fred.stlouisfed.org/series/DPRIME#0.  The same graphical representation can be viewed by clicking on "Edit Graph," selecting a frequency of "Quarterly," and selecting and aggregation method of "Average."

[6] The court notes, in this regard, that the Dow Jones Industrial Average saw an increase of approximately 11 percent per year between December 15, 2011 and July 8, 2019.  See Yahoo! Finance, Dow Jones Industrial Average, available at https://finance.yahoo.com/chart/DJI.

claim on December 11, 2014 through the defendants' notification to Mrs. Tyll of their intent to pay $1 million in benefits, on April 17, 2017. The same eight percent interest will be calculated, as to the remaining benefits, from the period of the initial denial on December 11, 2014, through the date of this Ruling, entered on July 12, 2019. The court therefore finds that Mrs. Tyll is entitled to the following amounts of interest. As to the $1 million in benefits, Mrs. Tyll is entitled to interest in the amount of $198,308.72. As to the remaining $4 million, Mrs. Tyll is entitled to interest in the amount of $1,693,134.01.

## IV.    CONCLUSION

For the reasons stated above, the defendants' Motion for Summary Judgment (Doc. No. 58) is **GRANTED IN PART** and **DENIED IN PART**, and the plaintiff's Motion for Summary Judgment (Doc. No. 59) is **GRANTED IN PART** and **DENIED IN PART**. Judgment shall enter in favor of the plaintiff in the amount of $4 million plus interest of $1,891,442.73.

**SO ORDERED.**

Dated at New Haven, Connecticut this 12th day of July 2019.


/s/Janet C. Hall
Janet C. Hall
United States District Judge